# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

**Criminal Number**
**No. 03-10370-DPW**

## UNITED STATES OF AMERICA

## VS.

## DANIEL MACAULEY

## DEFENDANT'S COMBINED MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM

Now comes the defendant, Daniel Macauley, in the above numbered indictments and does respectfully submit the within combined sentencing memorandum and motion for downward departure.  The defendant shall also note herein any objections to the Presentence Report (PSR) that he asserts.

## STATEMENT OF THE CASE

The defendant, Daniel Macauley, agrees with the statement of the case as well as the procedural history noted in the Presentence Report hereinafter referred to as PSR Part A captioned "The Offense."

The defendant, Daniel Macauley, agrees with the statement of offense conduct and case overview set forth in I. ¶2-4.  The defendant agrees with the statement set forth in II captioned "The Wiretaps," ¶5-9.

1

The defendant agrees with the statements set forth in III captioned, "Cooperator Information," ¶10-22.  The defendant agrees with the statements set forth in B. captioned, "Information From Unindicted Co-Conspirators," ¶23-37.  The defendant agrees with the statement set forth in II captioned, "CW-2," ¶38-43 as well as III captioned, "CV-6 (Gary Milo)," ¶44-48 as well as III captioned "Edward Parker," ¶49-50 as well as ¶5 Karen Woo, ¶51-55 as well as ¶6 captioned "Kenneth (Campo) Laung," ¶56-61.

While agreeing that the defendant does not dispute the allegations set forth in the aforementioned paragraphs and captions, the defendant notes that his involvement in all respects was limited to his dealings with co-defendant, Walter, and at no time did the defendant the defendant conspire with, have any interaction with any of the aforementioned individuals or have any knowledge of any of the aforementioned individuals or have any knowledge of the aforementioned allegations as the defendant was not part of the conspiratorial arrangements or relationships involving the above individuals.  The defendant notes that he maintained a "buyer-seller relationship" with Walter and was, in effect, a "independent contractor."  The defendant was a minimal participant in the terms of the conspiracy as alleged by the government.

The defendant submits that there is no evidence that he had any agreement to participate in the larger criminal organization referred to above and refers to

United States vs. Pressler, 149 F.3d 144 (3rd Cir. 2001).  See also United States vs. Townsend, 924 F.2d 1385 (7th Cir. 1991) as well as United States vs. Newell, 741 F.2d 570.

The defendant agrees with the statements set forth on Information on Individual Defendants; Weight Calculations set forth in IV with reference to A. Douglas Bannerman, ¶62-72.  Again, the defendant notes that he has no knowledge of or participation with the aforesaid Bannerman therefore does not assert any objection or observation to the aforesaid allegations.

The defendant agrees with the statements set forth on Information on Individual Defendants; Weight Calculations set forth in IV with reference to B. Kurt Walter, ¶73-83.  Again, the defendant notes that he has no knowledge of or participation with the aforesaid Walter therefore does not assert any objection or observation to the aforesaid allegations.

The defendant agrees with the statements set forth on Information on Individual Defendants; Weight Calculations set forth in IV with reference to C. Gary Newell, ¶84-95.  Again, the defendant notes that he has no knowledge of or participation with the aforesaid Newell therefore does not assert any objection or observation to the aforesaid allegations.

As it relates to D. captioned "Daniel Macauley" the defendant agrees with the statement of facts set forth in ¶96-98.  The defendant notes not by way of

objection but by further illustration that the defendant, Macauley, was working in his professional capacity in the Chinese restaurant in Newton Center at the same time that he was associated with Walter who was working to renovate the Chinese restaurant.  The defendant does not, however, contest the allegations of marijuana purchase from Mr. Walter and his repeated inquiries and requests for opportunity to purchase marijuana for his own use as well as distribution to his own customers on a much smaller scale.  The defendant therefore has no objection to and agrees with ¶96-102.

As it relates to ¶2 captioned, "Applicable Drug Weight" Macauley does agree with the government's contention as it relates to the calculations of drug weights applicable to his criminal culpability including the government's calculation of the relevant conduct as it relates to the 6.0 grams of cocaine and 1580 grams or 1.6 kilograms of marijuana seized in his home with a total applicable drug weight to be assessed to Macauley in the amount of 13.5 kilograms of marijuana.

The defendant agrees with the statement set forth in E. captioned, "John McCarthy, ¶107-117 with the observation that he had no involvement with the aforesaid Mr. McCarthy nor did he have any knowledge of any of the interactions of any of the co-defendants with Mr. McCarthy.

The defendant agrees with the statement set forth in F. captioned, "John Graham, ¶118-124 with the observation that he had no involvement with the aforesaid Mr. Graham nor did he have any knowledge of any of the interactions of any of the co-defendants with Mr. Graham.

The defendant agrees with the statement set forth in G. captioned, "Jose Vezga, ¶125-131 with the observation that he had no involvement with the aforesaid Mr. Vezga nor did he have any knowledge of any of the interactions of any of the co-defendants with Mr. Vezga.

The defendant agrees with the assessment that there is no identifiable victim set forth in this case nor is there any information indicating that the defendant has obstructed justice.  The defendant agrees that he has indicated to counsel for the government very early on in this case that he has admitted his culpability in the instant offense and agrees with the Probation recommendation that he be granted Acceptance of Responsibility as well as the governments motion for third point credit resulting in a 3 level reduction per U.S.S.G. §3E1.1a and b.

The defendant agrees with the Offense Level Computation as set forth in ¶135-140 and the calculations through ¶147 regarding Total Offense Level being a 13.

The defendant does note, however, that as set forth above the defendant would object to any inclusion for all acts and omissions of others that were alleged

to be in furtherance of the jointly undertaken criminal activity that were reasonably foreseeable in connection with that criminal activity pursuant to §1V13 (a)(1)(B) as the defendant only dealt with Mr. Walter as set forth above.

The defendant reserves until the time of argument at sentencing the applicability of the criteria of U.S.S.G. §5C1.2 as it relates to a further 2 level reduction as set forth under U.S.S.G. §2D1.1(b)(6) resulting in a total offense level of 11.

The defendant agrees with the Probation officer's calculation that the defendant is Criminal History I. The defendant agrees with Part C-Offender Characteristics as it relates to the detailed recitation of the defendant's background and personal history. Further, the defendant specifically incorporates by reference and agrees with the statements of substance abuse as it relates to its impact on his state of mind at the time of the criminal activity pled and admitted to by the defendant herein.

The defendant agrees with the balance of the personal history allegations as well as the employment record set forth in detail in the PSR.

The defendant agrees with the statement of financial condition and ability to pay as well as other significant financial information set forth through the balance of the PSR to ¶226.

The defendant has no objection to the balance of the PSR as it relates to D.-Sentencing Options and will argue for the appropriate sentence at the time of the sentencing hearing.

The defendant notes that the majority opinion set forth in <u>United States vs. Booker</u>, 125 S.C. 738, 748-750 (2005) clearly indicates that the guidelines are advisory and this Court must consider the guideline ranges as well as factors set forth in Title 18 U.S.C. §3553a (4) as well as other statutory factors set forth in §3553a.

The sentencing court must now consider all of the factors set forth in 18 U.S.C. §3553a not just the guidelines and policy statements of the guidelines manual.  See <u>Booker</u>, 125 S.C. at 757.  See also <u>United States vs. Crosby</u>, 397 F.3d 103 (2nd Cir. February 2, 2005), <u>United States vs. Hughes</u>, 401 F.3d 540 (4th Cir. March 16, 2005).  The new mandatory principle as set forth appears to be a limiting one in that the sentence must be "sufficient but not greater than necessary to fulfil (¶2) the need for the sentence imposed-."

    A.    To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

    B.    To afford adequate deterrents to criminal conduct;

    C.    To protect the public from further crimes of the defendant, and;

D.     To provide the defendant with needed educational and/or vocational training, medical care or other correctional treatment in the most effective manner.  18 U.S.C. §3553 (a)(2).

This has been referred to as the "Parsimony Principle."  See <u>United States vs. Gray</u>,      F. Supp. 2d      (S. Dist. WVA, March 17, 2005), <u>United States vs. Angelos,</u> 345 F. Supp. 2nd 1227 (D. Utah, November 16, 2004).

The factors the Court "shall consider" in determining a sentence that is sufficient but not greater than necessary are;

1.)     Nature and circumstance of the offense as well as the history and characteristics of the defendant.

2.)     The purposes of sentences above.

3.)     The kinds of sentences available.

4.)     Advisory guidelines.

5.)     Any pertinent policy statement in the guidelines manual including departures.

6.)     A need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

7.)     The need to provide restitution to any victims of the offense.  See <u>United States vs. Pimental,</u>    F. Supp. 2d, 2005 (W.L. 958245) (D. Mass. April 15, 2005).

The defendant notes that a review of the defendant's personal history, position in society as a responsible husband, parent and citizen coupled with post offense rehabilitation and his acceptance of responsibility and remorse would indicate that this Court should consider sentencing below the applicable guideline. It is acknowledged that this Court may "depart" more freely than the strict pre-Booker regime would have allowed.  See United States vs. Bailey, No. 4, 02CR3040, slip opinion at 16-21 (D. Neb. May 12, 2005), (Kopf, J.), (The court noted that the guidelines "are not as rigid as we make out" and departed 8 levels to probation based on family circumstances in a child pornography case).  See also United States vs. Perez-Chavez, No. 2; 05-CR00003PGC, 24-26 (D. Utah, May 16, 2005)( Cassell, J.) (departing for family circumstances).

To this end, the defendant notes that the Sentencing Reform Act has always provided that the "Court in determining the particular sentence to be imposed shall consider;

1.)    The nature and circumstance of the offense ***and the history and characteristics of the defendant.***"  18 U.S.C. §3553a(1) (emphasis supplied) and "no limitation shall be placed on the information concerning the ***background, character*** and conduct of the defendant which the Court may receive and consider for purposes of imposing an appropriate sentence.  18 U.S.C. §3661 (emphasis supplied).

Mitigating factors that were previously discouraged except under certain circumstances or for certain purposes should be considered more broadly to the extent they bear on the sentencing considerations found in §3553a. These include age, education and vocational skills, mental and emotional condition not meeting diminished capacity standards, physical condition or appearance, employment record, family ties and responsibilities, military, civic, charitable or public service. Likewise, the limitations on each of the generally encouraged mitigating factors set forth in U.S.S.G. §5K2.10-13, 16, 20 and 22 should no longer bar considerations of these factors to the extent they are relevant to a §3553a inquiry.

The Court may post <u>Booker</u> consider formerly discouraged factors or facts that would not have met pre-<u>Booker</u> standards for departure to impose a lower sentence. See <u>United States vs. Antonakopoulos</u>,    F.3d    (2005 W.L. 407365 at 3-4, 12 1st Cir. February 22, 2005). See also <u>United States vs. Haidley</u>,    F. 3d (2005 W.L. 600358 at 2, 8th Cir. March 16, 2005).

The defendant notes that not only is his personal character as indicated above a factor that this Court may take into consideration in sentencing but the defendant notes that being a defendant over 40 the risk of recidivism drops dramatically lessening the need to protect the public from further crimes of the defendant under 3553(a)(2)(c). See <u>United States Sentencing Commission, Measuring Recidivism:  A Criminal History Computation of Federal Sentencing</u>

Guidelines at 12 ("recidivism rates decline relatively consistently as age increases" from 35.5 % under age 21 to 9.5% over age 50).  See

http://www.ussc.gov/publicat/recidivismgeneral.pdf.  See also United States vs. Thomas, 03CR30033-MAP, slip opinion at 11 (D. Mass. March 14, 2005) as well as United States vs. Nellmum, 2005 W.L. 30073 (N.D. Ind., F.3d 2005).

The defendant notes that this Court has the power to sentence the defendant to a probationary term with home confinement or house arrest as well as halfway house placement.  The defendant also notes that he has significant medical issues that this Court may take into consideration at the time of sentencing as well.  The defendant notes that under 18 U.S.C. §3553(a)(2)(D) the Court, in determining whether to impose a term of imprisonment and if a term of imprisonment is to be imposed the length of the term shall consider the factors set forth in §3553(a) to the extent they are applicable recognizing that ***imprisonment is not an appropriate means of promoting correction and rehabilitation.***  18 U.S.C. §3582(a) (emphasis supplied).

The Bureau of Prisons, as the Court is aware, has made numerous changes recently that make punishment harsher and eliminate treatment and rehabilitation opportunities that have been recommended or even assumed were in existence. For example, the BOP has implemented the following;

1.)     Change in availability of community confinement centers (CCCs) for

        initial designation and pre-release.

2.)     Elimination of ICC (boot camp) programs.

3.)     Closure of stand alone camps.

4.)     Limitations on RDAP (participation and benefit) (residential drug

        abuse treatment program with up to 12 month sentence reduction and

        up to 6 months in halfway house at end of sentence).

5.)     Limitation on camp placement because of offenses or conviction.

6.)     Lack of recreation facilities and/or directive not to repair or replace.

7.)     Curtailment of educational programs facilitated by community

        colleges.

8.)     Calculating good time credit at 47 days per year rather than 53 days

        per year.

9.)     Cut in quality and regularity of medical and mental health care.


Under the present post Booker sentencing structure this Court has the ability

to structure in an appropriate fashion with an effort to accomplish treatment or

rehabilitation in the most effective manner such as probation with or without

electronic monitoring with stipulation that defendant receive any appropriate drug treatment and/or counseling the Court deems appropriate.[1]

The defendant further notes that he is aware that the BOP will submit a letter or even present testimony indicating that it is capable of treating any type of medical or emotional health problems. The defendant notes that this issue has been countered, however, by the stark reality of the BOP and the severe nature of incarceration. See United States vs. Martin, 363 F.3d 25 (1st Cir. 2004), United States vs. Derbes, 369 F. 3d 579 (1st Cir. 2004), United States vs. Gee, 226 F.3d 885 (7th Cir. 2000).

The defendant notes that this Court may grant a downward departure under the Sentencing Guidelines for his minimal role in the alleged offense due to various factors such as age, physical deficiency and condition as well as absence of any physical threat to others, absence of risk of flight and conclusion that the defendant played a minor role in the conspiracy. United States vs. Sabino, 274 F.3d 1053 (opinion amended and superceded, 307 F.3d 446, rehearing denied, cert. den.), Stuart vs. United States, 124 U.S. 52. See also United States vs. Collins, 26 F. App. 705 (in determining whether to apply 2 point downward departure from sentencing guidelines based on defendant's role as minor participant in criminal activity the Court did not err in considering the defendant's role in larger criminal

---

[1] The defendant notes that since his arrest he has been active in one on one as well as group therapy and counseling in an effort to not only treat but also understand his deficiencies as an addict and its impact on not only his life but

scheme in determining a relative role rather than her role in the offense with which

he was charged even though defendant pled guilty to less serious offense other than

those originally charged.

The defendant notes that the fact that a person buys or sells as part of the

conspiracy by itself is generally held not sufficient to support an aggravating role

adjustment.  United States vs. Fuller, 897 F.2d 1217 (1st Cir. 1990).  The defendant

further notes that based on the review of the evidence set forth herein he would be

a minimal participant in any criminal activity and would therefore be entitled to a

decrease by 4 levels in accordance with U.S.S.G. §3B1.2 and at the very least he

would be a minor participant in the criminal activity warranting a decrease by two

levels in accordance with U.S.S.G. §3B1.2(b).  See Author's Discussion under

3B1.2; 1 Defining the words "minimal" and "minor" effective November 1, 2001

pursuant to Application Note 4 indicating that the term "minimal participant

applies to defendants described in Application Note 3(A) who are "plainly among

the least culpable of those involved in the conduct of the group."  In turn,

Application Not 3A states the defendant must be "substantially less culpable than

the average participant."

One indication of a minimal role according to Application Note 4 is the

defendant's "lack of knowledge or understanding of the scope or structure of the

_____

that of his extended family.

14

enterprise and the activities of others."  This is to be contrasted to the definition of a "minor role" wherein a minor participant, according to Application Note 5 is a "defendant described in Application Note 3(A) who is less culpable than most other participants but whose role could not be described as minimal."[2]

The defendant notes that the government has taken a position that he is to be sentenced only for the "amount of drugs he handled" and therefore he may not be entitled to U.S.S.G. §3B1.2 reduction.  See United States vs. Burnett, 66 F.3d 137 (7th Cir. 1995).

The distinction between a minor and minimal participant is "a thin line…and at times is difficult to determine just where to draw it."  See United States vs. Vega-Encarnacion, 914 F.2d 20 (1st Cir. 1990).  Courts nevertheless have granted the reduction for minor role but rejected further reduction for minimal role.  See United States vs. Munoz, 36 F.3d 1229 (1st Cir. 1994).

The defendant submits that his involvement as indicated above, being an independent contractor and having little or nothing to do with the overall conspiracy would entitle the defendant to a downward departure for minimal role adjustment or at least minor role in the offense and requests downward departure as set forth herein.

---

[2] It is to be noted, however, that effective November 1, 2001 the Commission reorganized the commentary to 3B1.2 to resolve the Circuit conflict over whether limited participants who are held accountable under 1B1.3 (Relevant Conduct) only for the conduct in which they are personally involved and perform a limited function in the concerted criminal activity would be precluded from consideration for an adjustment for mitigating role.

## I.   SEVERAL UNIQUE FACTORS MERGE IN THE INSTANT CASE THAT TAKE IT OUTSIDE OF THE HEARTLAND OF GUIDELINES CASES AND WARRANT A DOWNWARD DEPARTURE.

The Defendant submits that grounds exist to allow a downward departure for the otherwise applicable guideline range of imprisonment.  The Supreme Court has provided that a sentencing court has vast discretion in determining the appropriate sentence to impose and may depart downward from the otherwise applicable guideline range of imprisonment. United States v. Koon, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

In the words of the Guidelines themselves,

> "when a court finds an atypical case, one to which a particular guideline linguistically applies, but where conduct significantly differs from the norm, the court **may** consider whether a departure is warranted . . .  the Commission does not intend to limit the kinds of factors, whether or not listed in anywhere else in the guidelines, that could constitute grounds for departure in an unusual case."

### A.     Post-Offense Rehabilitation, Extraordinary Acceptance of Responsibility and Remorse

The Defendant suggests that grounds for a downward departure exist based upon his sincere remorse and his efforts at rehabilitation since the commission of the instant offense.  Evidence of his rehabilitation includes the Defendant's early communication of his intention to plead guilty, acceptance of personal responsibility, desire to make amends to society and his sincere remorse.

Every circuit that has considered the relationship between acceptance of responsibility and rehabilitation in light of the Supreme Court's decision in <u>Koon</u> has held that post-offense rehabilitation may serve as a basis for downward departure.  See; <u>United States v Bradstreet</u>, 207 F.3d 76 (1st Cir. 2000); <u>United States v. Green</u>, 152 F.3d 1202, 1207 (9th Cir.1998) (affirming 11-level downward departure for rehabilitation); <u>United States v. Brock</u>, 108 F.3d 31, 34 (4th Cir. 1997);  <u>United States v. Sally</u>, 116 F.3d 76, 79 (3rd Cir. 1997);  <u>United States v. Core</u>, 125 F.3d 74, 78 (2nd Cir. 1997);  <u>United States v. Kapitzke</u>, 130 F.3d 820, 823 (8th Cir. 1997);  <u>United States v. Rhodes</u>, 145 F.3d 1375, 1383 (D.C.Cir. 1998);  <u>United States v. Jones</u>, 158 F.3d 492, 502-03 (10th Cir.1998);  <u>United States v Rudolph</u>, 190 F.3d 720, 722-23 (6th Cir 1999);  <u>United States v. Rhodes</u>, 145 F.3d 1375, 1379 (D.C.Cir.1998); and <u>United States v. Core</u>, 125 F.3d 74, 77-78 (2nd Cir. 1997).

In <u>United States v. Brock</u>, 108 F.3d 31, 34 (4th Cir. 1997), the Court found that it was not improper for the district court to consider the defendant's efforts at post-offense rehabilitation as grounds for a downward

departure. The <u>Brock</u> court expressly found that the previous Fourth Circuit holding that post-conviction rehabilitation could never be a basis for departure was expressly over-ruled by <u>Koon</u>. <u>Id</u>. at 35. Such a departure is warranted where the factor is "present to such an exceptional degree that the situation cannot be considered typical of those circumstances in which an acceptance of responsibility adjustment is granted." <u>Id</u>.

Similarly, in <u>United States v. Maier</u>, 975 F.2d 944, 948 (2nd Cir. 1992), the Court held that a defendant's post-offense rehabilitation is a permissible basis for a downward departure. The Court held that "awareness of one's circumstances and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society," can remove a case from the heartland of typical cases, thus constituting a valid basis for departure. <u>Id</u>. See also; <u>United States v. Workman</u>, 80 F.3d 688, 701 (2nd Cir. 1996)("[P]ost arrest rehabilitation efforts by . . . defendants may justify downward departures under appropriate circumstances.")

At least one Circuit has determined that a defendant's remorse is a permissible basis for downward departure. <u>United States v Fagan</u>, 162 F.3d 1280 (10th Cir. 1998). The Tenth Circuit held that "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree." <u>Id</u>. 1284-85. Further, a defendant's efforts at drug rehabilitation have also been considered as a permissible factor warranting a downward departure by the sentencing court. <u>United States v Whitaker</u>, 152 F.3d 1238, 1240-41 (10th Cir. 1998).

In <u>United States v Bradstreet</u>, 207 F.3d 76 (1st Cir. 2000) this case, the district court found that because of Bradstreet's extraordinary efforts toward rehabilitation, community service, and efforts at educating his fellow

inmates, his rehabilitation took this case outside the heartland of the Guidelines. The district court found "Bradstreet's efforts at post-sentencing rehabilitation [to be] exceptional, unusual, and worthy of recognition." Therefore, the departure was warranted. Id. at 82-83.

The Defendant also notes that he has already learned a tremendous lesson and has experience substantial rehabilitation. Since the commission of the instant offense he has made extraordinary attempts at making amends to society. He has gone to exceptional lengths to make reparations to society by accepting personal responsibility for his actions, giving statements to the Government, notifying the authorities of his intention to plead guilty and providing the authorities with information and assistance concerning his involvement in the offense. He has done everything possible to restore the status quo in this case. Moreover, he is extraordinarily remorseful for his criminal conduct. He has embarrassed himself and humiliated his family by becoming involved in the instant offense. He finds himself in more trouble than he ever thought possible and has emerged from this experience with a completely new set of values and priorities. He has learned a difficult lesson and has already experienced substantial rehabilitation.

In addition to his extraordinary acceptance of responsibility and remorse, the Defendant has shown extraordinary gains at turning his life around. In fact, since the commission of the instant offense, the Defendant has purchased a new home as well as changing his job. As a result of these new responsibilities the Defendant has focused on new matters of importance and challenge him to change his life for the better. The Defendant's post-offense rehabilitative efforts are genuine and the Defendant's remorse is sincere. For these reasons, the Defendant would submit that this Court should consider and grant a downward departure on

the basis of the Defendant's efforts at rehabilitation since the commission of the instant offense.

### B.    The Defendant's Has Aided in The Facilitation of The Administration of Justice.

The Defendant's submits that his early plea of guilty and his conduct leading up to the plea of guilty provides grounds for a downward departure. The Defendant submits that his conduct does not squarely fall into either § 3E1.1 or 5K1.1 of the Guidelines'.  Defendant's conduct facilitated the proper administration of justice to an extraordinary degree and takes his case outside of the heartland of Guidelines' cases, warranting a downward departure.

In United States v Garcia, 926 F.2d 125 (2nd Cir. 1991), the defendant facilitated the proper administration of justice in district court when he entered a guilty plea early on and was willing to testify against two co-defendants.  In turn, his two co-defendants were prompted to plead guilty. The Second Circuit held that the Defendant's conduct did not fall within the § 5K1.1 of the Sentencing Guidelines authorizing downward departures for substantial assistance to authorities or under § 3E1.1 for acceptance of responsibility. Id. at 126-28.  The Court held that the Defendant's conduct in facilitating the proper administration of justice in the district court was a permissible ground for a downward departure.  Id. See also, United States v Volpe, 224 F.3d 72 (2nd Cir. 2000)(noting that activities facilitating the proper administration of justice may form the basis for a downward departure).

The Defendant recognizes that this Circuit has stated previously that a downward departure was not permissible based upon substantial assistance to the judicial system. See; <u>United States v. Shrewsberry</u>, 980 F.2d 1296 (9th Cir. 1992), cert. denied, 126 L. Ed. 2d 85, 114 S. Ct. 120 (1993). However, the Defendant would point out that this decision was prior to the Supreme Court's decision in <u>United States v. Koon</u>, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Notably <u>Koon</u> expanded the amount of discretion a district court has in determining whether to depart from the Guidelines. See; <u>United States v. Brock</u>, 108 F.3d 31, 34-35 (4th Cir. 1997)(overruling prior Fourth Circuit precedent and holding that after <u>Koon</u>, post-conviction rehabilitative efforts constitute a basis for downward departure) Notably, this Circuit has not decided whether facilitation of the administration of justice is a basis for downward departure since the decision in <u>Koon</u>.

The Defendant submits that similar to the situation in <u>Brock</u>, the Supreme Court's decision in <u>Koon</u> effectively overrules prior decisions that held the facilitation of the administration of justice was not a permissible ground to depart downward. See; <u>United States v Dethlefs</u>, 123 F.3d 39, 46 (1st Cir. 1997). The Defendant submits that his efforts in cooperation with the authorities and the judicial system take his case outside of the heartland of Guidelines cases and allows this Court to depart downward.

The Defendant has greatly assisted in the administration of justice. The Defendant waived his rights early on in the investigation and allowed the system to move swiftly and easily. Separate from substantial assistance, the Defendant immediately admitted his guilt and cooperated with the

authorities to end the offense.  He has not attempted to go to trial, but freely admitted to his conduct.  As a result of the Defendant's early admissions, cooperation and remorse the resources of the judicial system have been saved.  The Defendant's decisions early on and throughout this case have facilitated the administration of justice and saved this Court much time and expense.  Accordingly, the Defendant's conduct was extraordinary and it resulted in the swift and smooth facilitation of justice in this district court.  Accordingly, a downward departure is warranted.

### C.    Totality of the Circumstances

In <u>Koon v. United States</u>, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), the Supreme Court explained that the district court enjoys broad discretion in deciding whether to depart. <u>Koon</u>, 518 U.S. at 96.  "The relevant question, however, is not,[] whether a particular factor is within the *heartland*' as a general proposition, but whether a particular factor is within the heartland given all facts of the case." <u>Id</u>. at 99-100. (citation omitted).  Thus, <u>Koon</u> allows a court to take into consideration a combination of unusual or exceptional factor present in the case in determining whether to depart from the Guidelines. <u>Id.</u>  Courts may consider a "convergence of factors" and should take into account the "totality of circumstances" when considering where a defendant's behavior falls along the spectrum and whether to grant a downward departure. United States v. Fairless, 975 F.2d 664, 667-68 (9th Cir. 1992).

It is submitted that even if this Court determines that the above factors, standing alone, do not warrant a downward departure; taken together

they present an overwhelming cumulative reason for this Court to depart downward.   The Defendant notified this Court and the government of his intention to plead guilty early in the judicial process.  He has attempted to correct his wrongs by cooperating with the authorities and has aided in the facilitation of justice by sparing judicial time and resources.  Since 1998 the Defendant had no involvement with the criminal justice system and, in fact, had begun to turn his life around.  The Defendant is exceedingly remorseful concerning his conduct and has already experienced substantial rehabilitation.  All of these factors present a unique set of circumstances that take his case out of the heartland of the typical case. Accordingly, the Defendant requests that this Court depart downward based on a totality of the circumstances in this case.


Daniel MacAuley,
By his attorney


/s/ Kevin J. Reddington